May it please the Court, Counsel. My name is Nick Schwartzendruber. I'm with Poulsen, O'Dell & Peterson in Denver, Colorado, representing K2 America. The issue in this case, procedurally, is whether the District Court of Montana, the United States District Court, District of Montana, properly dismissed K2's complaint due to lack of subject matter jurisdiction. Substantively, the issue, though, is whether federal law preempts state and tribal jurisdiction in the area of Indian property law, which is subject to either trust or restricted status, and whether, in recognition of that preemption, 28 U.S.C. 1360b identifies the classes of cases that must be brought to the federal court. Let me ask you, as a preliminary matter, why shouldn't we ask the views of the United States and the tribe on this before reaching a decision? I mean, it does implicate tribal jurisdiction, arguably. It does potentially implicate what the Secretary of Interior may, the views that the Secretary of Interior may have on federal jurisdiction. I do not believe it implicates the interests of the tribe, given the area, the preemptive effect of federal law in this area, and given just that it's a dispute between two non-members. As to the Secretary of the Interior, there was briefing at the trial court level on the indispensability of these parties. It wasn't a basis of the district court's decision. I understand that, but it does. Your argument, essentially, is that these cases can only be adjudicated in federal court because of the Department of Interior and the control over leasing, particularly on allotted lands. Whether or not the Secretary is a necessary party, it seems to me, we might want to get the views of the United States. You don't have any objection to that, I assume. You just don't think it's relevant. I don't think it's relevant at this juncture. We did brief the issue. I guess from K2's position, the district court could fashion relief in the Secretary of the Interior's absence relative to these leases that would be meaningful to K2. In other words, the district court could order the defendant, if it were to impose constructive trust on these leases and order the assignment of these leases or this lease to K2. That would be meaningful relief, even though that would be subject to secretarial oversight through the Department of the Interior. But that's kind of an administrative matter. It's not really an issue of tort law, and we have every reason to think that K2 would get an assignment of the lease. Would the tribe's view of whether it had a coverable claim of jurisdiction be useful to obtain? I mean, there are two ways to do that. One is to ask for a briefing, and the other is to require exhaustion of tribal court remedies, and then the tribal court itself will determine whether it has jurisdiction. Right. And so, yeah, that could be addressed in one of two ways. The tribe could intervene in this case were the federal court to decide it, and the tribe could give its views as to whether exhaustion is required, and the court could decide that. Or K2 could file its claim in tribal court, and the tribe could determine its own jurisdiction. Why shouldn't that be required, as we have done in a number of previous cases, to require exhaustion of that issue in tribal court first? Because it's an issue, and that's the primary issue on appeal. It's an issue that concerns an interest in an allotment. It's a dispute concerning title and possession of an oil and gas lease covering an allotment. And given the plenary authority of the United States government in this area, given the trust responsibility, the extensive federal legislation, this is an area that's preempted by federal law, and therefore all disputes concerning these interests must be taken to federal court, as explained by the cases that we've cited in our briefs. Well, I'm not sure the cases go that far. Let me ask. Go ahead. Judge Nelson, please. That's the cases you cite in your brief. You cited Caterpillar v. Williams, and your brief relies on the Supreme Court's characterization of Oneida Indian Nation. But isn't Oneida easily distinguishable from the facts of this case? Oneida turned on the special historical relationship between Indian tribes and the federal government. In this case, neither K2 nor Rowland are Indian parties, as you mentioned, and K2's claimed ownership does not rely on a federal statute, a treaty, or a constitutional provision. There are some distinctions between the Oneida case and this case. However, what the Oneida case held was that the Indians' claims of possession pursuant to state law arose under federal law under the doctrine of federal preemption. And that same doctrine, even though the facts are distinguishable, that same doctrine applies in this case. There's a preemptive federal scheme here, and the federal courts have exclusive jurisdiction over these kinds of disputes. It is a federal creative interest. I'm sorry to interrupt you, but I better answer her question. I think, though, and I hope you can guess this, we have non-Indians involved here. We have two non-Indian corporations.  I don't believe it makes a difference. I think that ordinarily the cases that would fall within 1360b 99 times out of 100 would involve an Indian because it's a dispute concerning ownership or possession of land held in trust. But in the unique circumstances of this case, this is an oil and gas lease carved out of that allotment. It just happens to be that the dispute is between two non-Indians, but it still is an interest that is created under federal law and subject to federal oversight and within the scope of 1360b. But you're not really disputing the ownership, which you're asking. I mean, the ownership is clear. What you're asking for is a constructive trust be imposed on the ownership, which is two different things. K2 is claiming to be the rightful owner of all right, title, and interest to that lease that has been issued. It's not in the nature of like a quiet title action where the title to the action is disputed, but it still falls within the scope of the language of Section 1360b, and therefore according to the Supreme Courts of California and Alaska and Montana, it's within the class of cases that has to be decided in federal court. Well, I don't think they go that far. They're just saying the state courts can't impose equitable remedies or any remedies at all on title as to allotted lands. I mean, I think that's pretty clear. But the flip side is, does that confer federal jurisdiction? And that is a separate question. If the state of Montana can't confer federal jurisdiction on us, they can recognize the limits of their own jurisdiction. Just because you don't have a remedy in state court doesn't mean you have a remedy in federal court. No, and I understand that. And the cases that did consider 1360b were state court cases considering the limitations on their own jurisdiction. But I do believe that they all took that additional step forward, recognizing the preemptive effect of federal law in this realm and also recognizing that all such disputes must be adjudicated in federal court. Indian title is a possessory interest. The title is held in trust by the United States government for the benefit of Indians. So the Indians have never had, after conquest, the ability to dispose of their own interests without federal oversight, without federal approval. And so the trust relationship is best served by channeling all these types of disputes into federal court. Right, but all of your claims are founded on state law or state common law, correct? Correct. And all you're asking for is the federal remedy, as one of your remedies, of a constructive trust that would be placed on the oil and gas wells or the lease that's on the allotted land, right? I would say that the complaint reads like a state law complaint in that there's no specific. . . There's no federal tort of tortious interference. Correct, correct. But if you read the Caterpillar case, in instances of complete preemption, ordinarily, a well-pleaded complaint rule, a plaintiff has to state the basis for federal court jurisdiction on the face of the complaint. And that, I believe, is the reason why the district court dismissed our complaint. But there's an exception to the well-pleaded complaint rule, which is essentially the complete preemption doctrine is what it's called. And that says that state law claims, if they fall within an area of law that has been preempted by the federal government, by federal legislation, at their inception are considered federal claims. So these are actually federal common law claims. Well, actually, federal law doesn't preempt the claims. It just may preempt one of the remedies you seek. Federal law doesn't preclude you from getting damages against the corporation or Mr. Harper? Certainly. It doesn't at all? Certainly. Federal law does not preempt any remedies, but it does federal law is preemptive in the area of disputes concerning interests in Indian lands, whether it be title or possession. So, therefore, claims that would otherwise be brought in state court are considered federal claims after inception, simply because of the preemptive effect of federal law in that substantive area of law. Let me ask you one more question, and that is why couldn't a state court impose a constructive trust on the proceeds from the oil and gas operations without impacting title of the leasehold interests? I'm not certain that it could, but in this case, meaningful relief for K2 is to own this oil and gas lease. K2, your question presumes that the defendant, Roland, is going to drill these wells and equip them and produce them in as prudent and as a workmanlike manner as K2 would otherwise do, had K2 owned that lease. K2 would realize the benefits of its own operation, and so, therefore, imposing a constructive trust on the proceeds, if Roland doesn't drill or equip a well correctly and that well is not productive or not as productive, that's not a meaningful remedy to K2. Any further questions to the panel? No. Judge Nelson, did you get a full answer to your question? I interrupted. Yes, I did. Thank you, Judge Thomas. We'll give you a couple minutes to rebuttal. Thank you. Good morning, and may it please the Court. My name is Brad Ecclestead, and this morning it's my privilege to represent Roland, Oil & Gas. I would ask this Court to uphold the district court ruling by Magistrate Judge Strong, that Magistrate Judge correctly ruled that 28 U.S.C. Section 1360, Subpoint B, does not confer with Federal jurisdiction. Rather, it merely states that the grant of jurisdiction to several different states does not abrogate tribal sovereignty, and that is the reason why they must complete the exhaustion analysis and exhaust tribal remedies before being allowed to file in Federal court. One thing that puzzled me about that a bit is that I don't see how the Blackfeet Nation can adjudicate a tortious interference action between two non-Indians. It can decide, perhaps, whether or not a constructive trust is imposed, although I don't know that. But as you know, because you practice in this area, the Supreme Court has cut back on the civil jurisdiction of tribes. How do you think, how could the reservation adjudicate those tort claims between two non-members? First, Your Honor, it's important to understand that an element of the tribe first arose when the individual member, John Harper, was employed by K-2, and not Roland Orland Gass being employed by K-2 America. It was an individual Indian, and that his status as an Indian was proffered in the reply brief. So part of the claim arose when he was employed individually as an Indian by K-2 America. Second, because of the claims, unless I'm wrong, sorry to interrupt you again, but he's not a party to this action. That's correct, Your Honor. Certainly he's a primary witness, but he's not a party. Right. The second answer to your question, though, Your Honor, is because the interest affects not only the self-government of the Blackfeet Reservation, but there are consensual relationships between K-2 America and the tribe. Not only is this an allegation of tortious interference with a lot of leases, but there are also tribal leases involved in this suit. So while they ask for constructive trust to a lot of leases, the suit also impacts tribal minerals. And for that reason, your first question to the appellant as to why not force them to join the United States government and the Blackfeet tribe, the reason is because both those parties do have an interest. And State of Montana versus the United States recognizes that the Blackfeet Reservation retains its inherent jurisdiction to adjudicate relationships that are entered into consensually by parties like K-2 America with the Blackfeet tribe and with individual latis that are represented in trust by the Secretary of the Interior. Remember, the trust relationship ---- Let me stop you there, though. You only asked in district court that the tribe be joined, and you raised the argument about the indispensable. The tribe is an indispensable party. If your theory is correct, why isn't the United States an indispensable party here? Your Honor, I believe both parties would be considered indispensable. And I believe, to the best of my recollection, I believe both the United States and the Blackfeet tribe were represented to be potential indispensable parties. If the United States was omitted, that was an oversight, and they shouldn't be, because they both have the standing as being, one, either the trust representative for the lati owners, or two, the title holder to tribal minerals on the Blackfeet Reservation. So, to answer your first question, the United States of America and the Blackfeet tribe should have been joined as indispensable parties if the federal court were to entertain jurisdiction. Before we even get to that question as to whether or not there's federal court jurisdiction, we first have to look at the exhaustion analysis. And although Judge Strong did not specifically say that he was dismissing because they failed to exhaust tribal remedies, he did dismiss because 1360b does not abrogate tribal sovereignty. And that tribal sovereignty is recognized in the state of Montana versus the United States and its progeny that the Blackfeet tribe and other tribes retain their inherent sovereignty to adjudicate civil matters, both in terms of where they affect consensual relationships or where it affects self-government. So, I gather the oil field here involves, is it a checkerboard or is it a series of allotted lands that are dotted within the oil field along with tribal lands? Is that the makeup of it? Your Honor, it is a checkerboard. Now, the leases involved here, are they part of a larger lease or are the leases involved here only on allotted lands? No, it's both allotted lands and tribal lands and fee lands. And the lati in this case is a tribal member? I believe several, if not all of the latis are tribal members. Some are not. That wasn't planned and I couldn't speak intelligently about that status, Your Honor. Go ahead. Your Honor, you asked whether or not it makes a difference that both entities are non-Indians and it does make a difference for a couple of reasons. First, although Roland Oil and Gas is organized under state law and this court and other courts have held that that organization takes it out of jurisdiction in terms of it is a citizen or an entity of the state of Montana and therefore not a tribal member. The other parties to this are, one, alati mineral owners represented by the United States government, fee owners of mineral interests and tribal mineral owners or owners of tribal mineral interests. So the fact that these parties are not tribal parties or are rather state entities does not matter and still places jurisdiction within tribal court at least to the point that they have to exhaust tribal remedies before they can go to federal court and determine whether or not tribal jurisdiction was proper. That gets back to one of your other questions in terms of is the tribes view and whether or not jurisdiction is relevant is that should that be an issue now. And it is an issue now because 28 U.S.C. Section 1331 allows K-2 America to go back to federal court after they've exhausted tribal remedies and get a federal court ruling as to whether or not the Blackfeet tribe properly had jurisdiction to entertain the case in the first place. That all lies within the framework of the exhaustion analysis. What would happen if the tribal court said it lacked jurisdiction? Would it be back in federal court and what would your view of jurisdiction be then? Your Honor, if the Blackfeet reservation denied jurisdiction, then by all means because the United States of America is the trust representative of alati owners, whether or not they were joined as a party, federal court would have to entertain jurisdiction because Montana, specifically Montana state courts, do not have jurisdiction to rule in these cases. Well, they do except as to perhaps the imposition of a constructive trust. If you took that remedy out, this is clearly a state court case, wouldn't you agree? Your Honor, that's true to the point that it doesn't affect the title to the interest or the title to the minerals being produced. However, as K2 has stated, the remedy that they are after is the constructive trust and ownership or possession of these oil and gas leases, not merely the money damages. Well, we don't have leases in the record, but I assume that they have anti-assignment clauses and bankruptcy clauses and that sort of thing. They do, Your Honor, but the remedy that K2 America is asking for presupposes that the Secretary of Interior, as a trust representative, would believe it is in the alati's best interest to negotiate or sign an oil and gas lease with K2 America and not Roland Oil and Gas or a third party. It presumes that if this court believes that Roland Oil and Gas committed some tort and tort to impose a constructive trust that K2 America is the rightful owner, as if they had possessed those oil and gas leases and then been divested of those oil and gas leases by Roland Oil and Gas. And that is not the case. What has happened is K2 is asking for constructive trust and seeks possession of title of these minerals, which has been negotiated between Secretary of Interior and Roland Oil and Gas, between individual alati's and Roland Oil and Gas, and the Blackfeet tribe and Roland Oil and Gas. I assume that you would agree, maybe not, that a state court could impose a constructive trust on the proceeds of any wells or any leasehold interests without implicating title to the leaseholds. Your Honor, I don't believe the court could properly do that with affecting the title to that, because in terms of if there were any cloud placed on the title in terms of all the distributions or the run proceeds from these wells had to be placed in this constructive trust to be managed, according to a court order, that would affect the title to the interest, at least to the point of saleability to a third party. And K2 effectively would have the ownership of those oil and gas leases, even though there is a constructive trust imposed. Substantially, that would affect the title and interest to the minerals and not just the revenue proceeds. Do you think that K2 has any administrative remedies within the Department of Interior? Your Honor, no, I don't see any administrative remedies within the Department of Interior. However, there is, going back to federal court in terms of proper exercise of tribal court jurisdiction, and there are the state claims, as you mentioned, for the compensation or money damages that have been pledged in the complaint. One of the things, I mean, there are many things that puzzle me about this case, because we're looking at a lot of different jurisdictional aspects. But the Secretary of the Interior has to act on behalf of the Illatis and the tribe. It's unclear to me to what extent a court could say, no, we're going to impose a constructive trust and wrest ownership without the consent of the United States. I don't know if an answer to that question. Do you have an opinion? Your Honor, I agree completely in terms of a court's authority to impose a constructive trust when the United States Secretary of the Interior is not a party to the lawsuit and force the Secretary of the Interior either to negotiate and sign an oil and gas lease with K2 America or any other party. Okay. For that reason, I'd ask this Court to uphold the lower court's ruling. Yes. Let me make sure that ‑‑ I'm afraid I asked too many questions. Judge Nelson, do you have any questions? No, thank you. All right. No, thank you. You have two minutes for rebuttal. Yeah. Okay. K2 filed this action in federal court because the case law tells K2 that because of the preemptive effect of federal law in 1360B, federal courts are the only courts that can decide cases in this category. But even if you were to ignore the preemptive effect of federal law in 1360B, this is a case that's not within the sovereignty of the Blackfeet Indian tribe. It's a dispute between two nonmembers. So presumptively, under our Supreme Court precedent, lies outside of tribal court. It's Roland's burden, the defendant's burden, to prove why an exception applies that would otherwise bring it back into tribal court. Part of what they've said is that the leases involve not just allotted land but tribal land, and that would be potentially affected. And, of course, the alleged wrongdoer is a tribal member as well, even though not a party. So what effect does that have? For purposes of jurisdictional analysis, you look at the identity of the parties. Okay. Talk about the leases then. And then the leases, the constructive trust claim only applies to the lease that covers the allotted land. K2 is suing only for money damages as to the lands that are held by the tribe. And that's more of a business decision than it was anything else. K2 has an ongoing relationship with the tribe, is frequently before the tribal council, and doesn't want to be in a position where the tribe feels as though it has to intervene in the case. And that was our way of making this a dispute solely between a tort case, and solely between two Montana entities involving an allotted lease and then money damages as to the tribal lease. So we fall under Montana's rule of no jurisdiction over non-members unless the defendant can prove that one of the exceptions applies. That's been briefed. Neither exception applies in this case. So it's not within tribal court jurisdiction. States can't decide the issue because of 1360B. We have to be in federal court. Well, states can decide the issues except the states lack the power to impose a constructive trust over a federal lease. Correct. And I would submit to you because states can't give that remedy. I'm not sure that 16B gets you where you're going. If you're looking at a rising under-jurisdiction, then the question is a simple one, which is if you have no federal rights but you only have a federal remedy, is that enough to confer jurisdiction under a rising under-jurisdiction? It's an interesting question. The only thing I would close with is I would just say that the issue of the indispensability of the United States and the tribe were briefed. They weren't a basis of the court's decision. But as to the United States, K2 believes that an order requiring the defendant to assign its lease to K2 is meaningful relief, even though it's subject to Secretary of the Interior oversight and approval. Again, that's an administrative function. It doesn't relate to the tort law that is applicable in this case, and we have every reason to believe that K2 is a proper assignee under that lease. And I take it you agree with your opponent that you don't believe you have any administrative remedies within the Department of Interior? We don't have any administrative remedies within the Department of Interior. This is outside their jurisdiction. And the leases, although not in the record, are assignable. All right, very good. Thank you. Any further questions? Thank you both for your arguments. This is an interesting case, and we will be in recess for a few minutes. We will come back and chat informally with the students from the University of Oregon. We will confer, so it will be a few minutes. If you want to chat with our law clerk, that's fine. And I want to say, counsel, that you're welcome to stay, but one of our rules is we don't allow any questions about the case.
judges: Nelson D. W., Thomas, Graber